## In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-20-00057-CV
_____

## ZARKASHA ENTERPRISE, INC., Appellant

## V.

## OLD REPUBLIC TITLE INSURANCE COMPANY OF CONROE AND OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, Appellees

On Appeal from the 410th District Court
Montgomery County, Texas
Trial Cause No. 18-06-07745-CV

## MEMORANDUM OPINION

Appellant Zarkasha Enterprise, Inc. ("Appellant" or "Zarkasha") appeals the trial court's order granting summary judgment for Appellees Old Republic Title Insurance Company of Conroe and Old Republic National Title Insurance Company (collectively "Appellees" or "Old Republic"). David H. and Judy S. Moore ("the Moores") were plaintiffs in the original lawsuit, Zarkasha was the defendant, and the

1

Old Republic entities were third-party defendants.[1] The dispute between Zarkasha and Old Republic relates to a title insurance policy issued by Old Republic on a 3.9-acre tract of land located in the W. Berryman and the Britton Wilkes Surveys in Waller County, Texas, which Zarkasha purchased in 2009. In 2018, the Moores filed a suit against Zarkasha to quiet title to real property they allege is located in the David C. Dickson Survey in Montgomery County, Texas, which the Moores purchased in 2017. The Moores alleged in their petition that Zarkasha had an adverse claim on or interest in their property that operated as a cloud on the Moores' title to their property. The Moores alleged "the nature of Defendant's alleged interest in the property is a Special Warranty Deed With Vendor's Lien that was filed in Waller County on or about August 12, 2009 Volume 1172, page 590" which specifically describes the 3.9-acre tract that Zarkasha acquired in 2009.

Zarkasha filed a third-party petition against Old Republic alleging that Old Republic issued a title insurance policy on the 3.9-acre tract and that Old Republic had a duty to defend Zarkasha from the claims being asserted by the Moores. Old Republic filed a motion for summary judgment against Zarkasha, which the trial court denied, and then Old Republic filed an amended motion for summary

---

[1] The Moores and Zarkasha resolved their dispute and nonsuited their claims against each other. The Moores are not parties to this appeal.

judgment, which the trial court granted. On appeal, Zarkasha raises two issues, arguing that fact issues exist that preclude summary judgment. We affirm.

## Background

<u>Original Petition</u>

In June 2018, Plaintiffs David and Judy Moore filed an Original Petition against Zarkasha to quiet title to certain real property. The Moores alleged that they purchased an 18.162-acre tract in Montgomery County in 2017 and recorded the purchase in Montgomery County. The petition alleged that Zarkasha claimed an interest in the Moores' tract in Montgomery County, thereby clouding the Moores' title. The Moores contend they had no knowledge of Zarkasha's interest in the property before they purchased it. The Moores asserted that under section 13.003 of the Property Code, Zarkasha's interest in the property was invalid and unenforceable against the Moores because Zarkasha's purported interest in the property was recorded in a county other than where the property is located and the Moores purchased the property without notice of Zarkasha's interest. The Moores sought a declaratory judgment that they are the sole and rightful owners of the property.

The petition recited the following legal description of the Moores' property:

Being a 18.162 acre tract of land situated in the David C. Dickson Survey, Abstract Number 180 of Montgomery County, Texas, and being out of and part of a called 103.1 acres as described in deed recorded in Volume 343, Page 560 of the Deed Records of Montgomery County, Texas; said 18.162 acres being more particularly described as follows with all bearings based on the West line of a called 83.9242

3

acres as described in deed recorded in Clerk's File Number 8458948 of the Real Property Records of Montgomery County, Texas per the recorded deed;

BEGINNING at a 2 1/2 inch iron pipe, found for the Northwest corner of the herein described tract, common with the Northwest corner of the said 103.1 acres, same being in the West line of Montgomery County, Texas, the East line of Waller County, Texas and the South right-of-way line of 1488, and proceeding;

THENCE S 86°31'28"E, along the North line of the herein described tract, common with the North line of the 103.1 acres and the South right-of-way line of FM 1488, a distance of 300.33 feet, to a 1 1/4 inch iron pipe, found for the Northeast corner of the herein described tract, common with the upper Northwest corner of said 83.9242 acres;

THENCE S 00°38'35"W, along the East line of the herein described tract, common with the West line of the 83.9242 acres, severing the 103.1 acres, a distance of 2606.33 feet, to a 1 1/4 inch iron rod, found for the Southeast corner of the herein described tract, common with an interior corner of the 83.9242 acres;

THENCE N 88°57'03"W, along the South line of the herein described tract, common with a North line of the 83.9242 acres, a distance of 305.65 feet, to a 1 1/4 inch iron rod, found for the Southwest corner of the herein described tract, common with the lower Northwest corner of the 83.9242 acres, same being in the West line of the 103.1 acres, the West line of Montgomery County, Texas, and the East line of Waller County, Texas;

THENCE N 00°46'02"E, along the West line of the herein described tract, common with the West line of the 103.1 acres, the West line of Montgomery County, Texas and the East line of Waller County, Texas, a distance of 2619.01 feet, back to the POINT OF BEGINNING and containing 18.162 acres of land.

<u>Zarkasha's Answer, Third-Party Claim, and Counterclaim</u>

Zarkasha filed an Answer and asserted a general denial and specially excepted to the petition because it "fail[ed] to state with specificity the nature of the cloud of title Plaintiff claims Defendant has placed on the Property." Specifically, Zarkasha asserted that the petition failed to specify:

(a) the portion of Plaintiff's property on which Defendant has asserted a claim or encumbered;
(b) the manner in which Defendant has asserted a claim or interest on Defendant's property;
(c) when the [D]efendant asserted [its] claim or interest;
(d) whether Defendant's alleged claim or interest of Plaintiff's property resides in Montgomery County or Waller County.

Zarkasha also asserted several affirmative defenses: the Moores' claims are barred by their own acts or omissions that contributed to the unenforceability of the contract and their alleged injury; the Moores' claims are barred by Zarkasha's adverse possession; and the Moores are estopped from asserting claims against Zarkasha because of their own failure to adequately investigate open and obvious indicia of Zarkasha's claims to the property.

In an amended answer, Zarkasha also pleaded not guilty to the Moores' trespass to try title claim. Zarkasha alleged that the Moores' claims were barred by the three-year statute of limitations in section 16.024 or the five-year statute of limitations in section 16.025 of the Civil Practice and Remedies Code because Zarkasha had continuous uninterrupted possession of the property under color of

5

title since July 31, 2009 and had paid all applicable taxes on the property. Zarkasha also filed a motion to transfer venue from Montgomery County to Waller County, arguing that "the property at issue" is located in Waller County. Attached to the motion was the legal description of the 3.9083-acre tract that Zarkasha contends it owns.

In October 2018, Zarkasha filed an Original Third-Party Petition against Old Republic Title Company of Conroe ("Old Republic-Conroe"). Therein, Zarkasha alleged it purchased the 3.9083-acre tract of land in Waller County in July 2009 and obtained a title insurance policy, and Old Republic-Conroe handled the closing and recorded the deed in Waller County. Prior to the purchase, Zarkasha obtained a survey of the property, which showed that the entirety of the 3.9083-acre tract was located in Waller County and that the tract included an electric easement located on the boundary of Waller and Montgomery County, and Zarkasha asserted that Zarkasha had reaffirmed the accuracy of the survey since being served with the Moores' lawsuit. According to Zarkasha, after the Moores filed their lawsuit, Zarkasha presented a title insurance claim to Old Republic-Conroe, and they "ignored the claim effectively denying same."

Zarkasha asserted a claim for breach of a contract for title insurance. Zarkasha alleged that it paid a premium for title insurance and presented Old Republic-Conroe with the Moores' claims for discrepancy and conflict in acreage and alleged

6

misfiling of deeds in Waller County. According to Zarkasha, Old Republic-Conroe failed to acknowledge and defend Zarkasha on the claim asserted by the Moores, which it was required to do under the title insurance policy. Zarkasha also asserted a claim for declaratory judgment that it had complied with its duties and obligations, that the title policy was valid and enforceable, and that Zarkasha was entitled to full reimbursement of damages and attorney's fees related to the property. Zarkasha also sought indemnification against Old Republic-Conroe.

Zarkasha filed a counterclaim against the Moores for declaratory judgment, seeking a declaration that Zarkasha is the rightful owner of the 3.9083 acres, that it was in rightful, open, and continuous possession thereof since July 31, 2009, that the 3.9083 acres is located entirely in Waller County, that Zarkasha will retain full ownership rights in the property, and that it was entitled to attorney's fees.

Old Republic-Conroe's Answer

Old Republic-Conroe filed an answer asserting a general denial and asserting that Zarkasha's claims are barred by the failure of consideration because Zarkasha elected to forego area and boundary coverage in its title insurance policy. Old Republic-Conroe also asserted that it acted as an agent for its disclosed principal, Old Republic National Title Insurance Company ("Old Republic-National"), and under Texas law, when an agent contracts on behalf of a disclosed principal, the agent is not generally liable on the resulting contracts. Old Republic-Conroe denied

7

that Zarkasha fulfilled its obligations under the contract by paying the premium for title insurance policy and that Zarkasha's title policy "specifically excludes coverage for discrepancies, conflicts, or shortages in area or boundary lines, as well as any encroachments and overlapping of improvements." Old Republic-Conroe denied that it was responsible to defend Zarkasha or that it was liable for damages pertaining to the property. According to Old Republic-Conroe, "[t]he policy issued by Old Republic National Title Insurance Company exclusively covers a tract of land located in Waller County, Texas."

Zarkasha's Amended Original Third-Party Petition

Zarkasha filed an amended third-party petition naming Old Republic-National (in addition to Old Republic-Conroe) as a third-party defendant and seeking relief on its breach of contract claim and indemnification against both Old Republic-Conroe and Old Republic-National. The amended petition asserted that Zarkasha paid a premium to Old Republic-Conroe and Old Republic-National in 2009 to guarantee its title, "including area, boundary and recording, by title insurance (Policy No. TO08002696)."

Old Republic-National's Answer

In its answer, Old Republic-National asserted:

[] All of Zarkasha's claims are barred by the failure of Zarkasha's consideration. Zarkasha was given the option of including area & boundary coverage as part of its title policy and elected to forego such protection. . . . Zarkasha's title policy specifically excludes coverage

8

for discrepancies, conflicts, or shortages in area or boundary lines, as well as any encroachments and overlapping of improvements. The policy also specifically excepts from coverage any fence overlap along the easterly property line. . . . The policy issued by [Old Republic-National] exclusively covers a tract of land located in Waller County, Texas. Therefore, [Old Republic-National] specifically denies it is required to defend Zarkasha from the claims asserted by Plaintiffs. Zarkasha's policy does not cover the disputed tract, which is located in Montgomery County.

Old Republic-National denied it was liable for any damages relating to property in Montgomery County and denied it was required to defend Zarkasha.

Original Motion for Summary Judgment

Old Republic-Conroe and Old Republic-National (collectively "Old Republic") filed a joint motion for summary judgment. According to the motion, the Moores' original petition concerned an 18.162-acre tract in Montgomery County, and the title insurance policy purchased by Zarkasha from Old Republic covered property described as "a tract of land containing 3.9083 acres of land, more or less, situated in the W. Berryman Survey, A-400 and the Britton Wilkes Survey, A-273, both in Waller County, Texas[.]" Old Republic argued that they are entitled to summary judgment as a matter of law because the property on which the Moores sued is not the property covered by Old Republic title insurance policy, the policy limits coverage to property in Waller County, and the Moores' claims did not invoke coverage under the policy.

9

The motion included as exhibits a copy of the title insurance policy, a copy of the Special Warranty Deed with Vendor's Lien conveying property in Waller County (as described above) to Zarkasha, and a copy of the Moores' original petition. The deed recites the legal description of Zarkasha's property as follows:

> All that certain tract or parcel containing 3.9083 acres of land situated in the W. Berryman Survey, A-400 and the Britton Wilkes Survey, A-273, both in Waller County, Texas, said 3.9083 acre tract being that same tract described as 3.91 acres of land in a deed filed for record in Volume 518, Page 825 of the Official Public Records of Real Property, Waller County, Texas, (O.P.R.R.P.W.C.T.), and being more particularly described by metes and bounds as follows:

> BEGINNING at a 10" fence post (found) in the South right-of-way line of F.M. 1488, (variable width), the East line of said W. Berryman Survey, the East line of said Waller County, the West line of the David C. Dickson Survey, A-180 in Montgomery County, Texas, the West line of said Montgomery County and the West line of the remainder of that certain call 103.1 acre tract of land as described in a deed filed for record in Volume 343, Page 560 of said Montgomery County Deed Records marking the Northeast corner of the herein described 3.9083 acre tract of land;

> THENCE S 01°28'26" W, (call S 01°46'00" W), along the common line of said W. Berryman Survey, the East line of said Waller County, the West line of said David C. Dickson Survey, the West line of said Montgomery County, the West line of said call 103.1 acre tract of land and the East line of said 3.9083 acre tract of land, passing at 441.02 feet, (call 441.80 feet), a 5/8" iron rod (found) marking the Northeast corner of said Britton Wilkes Survey and the Southeast corner of said W. Berryman Survey, a total distance of 851.79 feet, (call 852.40 feet), to a 5/8" iron rod with EIC cap (set) marking the Northeast corner of Lot 4 in Block 9 of Walnut bend, Section 1, a subdivision in said Waller County, Texas according to the map or plat thereof filed for record in Volume 201, Page 199 of said Waller County Deed Records and the Southeast corner of the herein described 3.9083 acre tract of land;

10

THENCE N 87º21'31" W, (call N 87º24'37" E), along the common line of said Lot 4 and said 3.9083 acre tract of land, passing at 6.62 feet a 1" iron pipe (found) for reference, a total distance of 200.00 feet to a 1" iron pipe (found) in the East right-of-way line of Joseph Road, (80.00 feet in width), marking the Northwest corner of said Lot 4 and the Southwest corner of the herein described 3.9083 acre tract of land;

THENCE N 01º36'00" E, (call N 01º25'37" E), a distance of 304.00 feet along the East right-of-way line of said Joseph Road and the West line of said 3.9083 acre tract of land to a 5/8" iron rod with EIC cap (set) for angle point;

THENCE N 01º23'56" E, (call N 01º25'37" E), along the East right-of-way line of said Joseph Road and the West line of said 3.9083 acre tract of land, passing at 95.02 feet at 1" iron pipe (found) for reference, passing at 102.79 feet the common line of said Britton Wilkes Survey and said W. Berryman Survey, a total distance of 549.74 feet to a ½" iron rod (found bent) marking the intersection of the East right-of-way line of said Joseph Road with the South right-of-way line of said F.M. 1488, same point marking the Northwest corner of the herein described 3.9083 acre tract of land;

THENCE S 86º48'06" E, a distance of 200.l0 feet, (call S 87º03'00" E, 200.00 feet), along the South right-of-way line of said F.M. 1488 and the North line of said 3.9083 acre tract of land to the POINT OF BEGINNING and containing 3.9083 acre of land[.]

Zarkasha's Response

According to Zarkasha, the Moores claimed the property at issue is in Montgomery County, Zarkasha disagreed and disputed the allegation because Zarkasha argued its 3.9 acres is located in Waller County, and an independent surveyor had yet to determine the accuracy of the various surveys related to the

11

property.[2] Zarkasha asserted that Old Republic filed the deed transferring the property to Zarkasha in Waller County and "the failure to file the deed transferring title to the Property to Zarkasha in Montgomery County, Texas, resulted in the Moores' claims to the Property being asserted in this lawsuit." Zarkasha also stated that the title policy issued by Old Republic specifically covered the risk of "a document not properly filed, recorded, or indexed in the Public Records[.]" Zarkasha argued that Old Republic's position that the property is not covered because it is located in Montgomery County is "premature" because "none of the parties, including [Old Republic] have engaged in any concerted effort to reach a final conclusion whether the Plaintiffs' claims have merit or whether the Property is

_____

[2] In Appellant's brief, Zarkasha alleges that "the Moores claimed that a large portion of the Zarkasha tract was situated in Montgomery County." The appellate record includes a copy of a motion for sanctions filed by Zarkasha against the Moores, which is not at issue in this appeal. Therein, Zarkasha described the nature of the Moores' original claim against Zarkasha as follows:

[] The Moores sued [Zarkasha] in 2018 in the instant case claiming approximately one-half acre of the land was located in Montgomery County and not in Waller County and therefore belonged to the Moores. The parties each have a survey from a licensed surveyor supporting their claims.

[] The tracts front of FM 1488 near the corner of Joseph Road. The Zarkasha Tract is located in Waller County, the Moore Tract is in Montgomery County. The Zarkasha Tract has an allowed cut granting it access from FM 1488, the cut being located on the sliver of property the Moores claim belongs to them. Reportedly the Moores do not have access to their Tract from FM 1488 and required an access easement from Zarkasha.

The appellate record does not include a response to this motion from the Moores.

12

actually located in Montgomery or Waller County, Texas." According to Zarkasha, under the eight-corners rule, Old Republic owed Zarkasha a duty to defend, and possibly to indemnify, Zarkasha as to the Moores' claims. Attached as an exhibit to Zarkasha's response was an email from an escrow officer for Old Republic Title Company dated November 4, 2010 and stating in relevant part: "in my research, I remembered that the deeds from 1999 had been filed in Montgomery County instead of Waller County, so we had to re-record them in Waller County, so the attachment has ALL of the deeds, including the one that was recorded into Zarkasha Enterprise, Inc."

Old Republic's Reply

In their reply, Old Republic argued that, under the eight-corners rule, a court looks solely at the allegations in the pleading of the underlying lawsuit in light of the policy provisions to determine whether the insurer has a duty to defend. Old Republic also argued that whether there is a duty to defend is a question of law and is based on the allegations in the complaint without reference to their truth or falsity. According to Old Republic, the case did not involve facts or conduct covered by the title policy issued to Zarkasha, and Old Republic had no duty to defend Zarkasha against the Moores' allegations.

Old Republic stated that the basis of the Moores' lawsuit was that Zarkasha was making an adverse claim to property in Montgomery County. According to Old

13

Republic, the Moores had not alleged facts that would trigger a defense under the terms of the title policy issued to Zarkasha and Old Republic owed Zarkasha no duty to defend as a matter of law.

Old Republic also stated:

a) [Zarkasha] purchased property located in Waller County (the Tract)[]; b) Zarkasha bought a title policy from Old Republic covering property in Waller County[]; c) [Zarkasha] obtained two surveys, which established "the entirety of the Tract in Waller County"[]; and d) Old Republic recorded the deeds conveying the Tract in Waller County.

According to Old Republic, assuming all facts as alleged by Zarkasha are true, Old Republic filed instruments in accordance with Texas law, which requires instruments related to real property to be filed in the county where the property is located.[3]

Zarkasha's Sur-Reply

In a sur-reply, Zarkasha asserted that it had not been determined whether the Moores' claims were valid or whether the property at issue lay in Waller or Montgomery County. According to Zarkasha, its policy with Old Republic covered "[a]ny defect in, lien or encumbrance on [] Title[.]" Zarkasha argued that the policy included no exception or exclusion that coverage would not extend to the land if it

_____

[3] Section 11.001(a) of the Property Code states, in relevant part, "[t]o be effectively recorded, an instrument relating to real property must be eligible for recording and must be recorded in the county in which a part of the property is located." *See* Tex. Prop. Code Ann. § 11.001(a).

14

was determined that the land was actually located in Montgomery County. Zarkasha also argued that the policy "specifically covers claims for filing the deed in the wrong county - which is the basis for the Moores' specific claims in their Original Petition." According to Zarkasha, "[t]here are dueling surveys, placing the Property in both counties[,]" and until an independent survey or fact-finder determined where the property lay, Old Republic had the duty to defend Zarkasha's title to the land for which it purchased the policy. On May 2, 2019, the trial court denied Old Republic's original motion for summary judgment.

Old Republic's Amended Motion for Summary Judgment

In October 2019, Old Republic filed an amended motion for summary judgment, arguing that the policy at issue specifically excepted "[a]ny discrepancies, conflicts, or shortages in area or boundary lines[]" as well as "[d]efects, liens, encumbrances, adverse claims, or other matters [] attaching or created subsequent to Date of Policy[.]" According to Old Republic, Zarkasha had no coverage for this dispute because (1) the underlying dispute involved the boundary lines of the Moores' and Zarkasha's tracts because the Montgomery County-Waller County line is the boundary line of both tracts and (2) the Moores acquired their tract on August 16, 2017, which is subsequent to the issuance of the policy. Old Republic also argued that the Moores sought a determination of "18.162 acres lying totally in Montgomery County, Texas, the western boundary of such property being designated as the

15

Montgomery County-Waller County line[]" and that Zarkasha's property was "totally in Waller County Texas, such property having its eastern boundary designated as the Waller County-Montgomery County line." Accordingly, "[s]ince the designations of the respective boundaries do not allow for any conflict or overlap, coverage under [Old Republic's] policy is not involved, and Movants are entitled to judgment as a matter of law against Respondent."

Zarkasha's Response

In a response to Old Republic's Amended Motion for Summary Judgment, Zarkasha alleged that it had reached a settlement agreement with the Moores after mediation. Zarkasha argued that under the eight-corners rule, Old Republic had a duty to defend "and possibly indemnify" Zarkasha as to the Moores' underlying claims. Zarkasha argued that the Moores' petition alleged that Zarkasha's deed was incorrectly recorded in Waller County and not in Montgomery County, where the property is located. According to Zarkasha, its title insurance policy covered the risk of "a document not properly filed, recorded, or indexed in the Public Records" and "if [Old Republic] erroneously determined the Property was located in Waller County, there is no written exception or exclusion absolving it of coverage." Zarkasha further argued that "to date there has not been a definitive determination of the county in which the disputed property lies." Therefore, Zarkasha argued that it was "premature" for Old Republic to assert that there is no coverage under the

16

policy because of the allegations that the property is located in Montgomery County. According to Zarkasha, Old Republic owed Zarkasha a duty to defend based on the eight-corners rule and a duty to indemnify. Zarkasha also argued that the underlying lawsuit was not a dispute over where the boundary line between the adjoining tracts is located as Old Republic claimed but rather whether Zarkasha's property lay in Montgomery or Waller County and where the deed was recorded, and Old Republic had a duty to determine where the property lay before denying coverage. Zarkasha also argued that Old Republic's argument that the policy excluded coverage for claims arising subsequent to the date of the policy was "implausible and illogical" and "defeats the purpose of purchasing title insurance[.]" According to Zarkasha, such a provision is ambiguous and should be interpreted in favor of coverage for Zarkasha.

Attached to Zarkasha's response were copies of the title policy, the Moores' Original Petition, certain correspondence between Old Republic and Zarkasha, an expert report by Robert Philo, a Certified Title Insurance Professional, and an affidavit from a representative for Zarkasha certifying that the exhibits were true and correct copies. In Philo's opinion, Old Republic had a duty to defend Zarkasha under the policy. According to Philo, the Moores' petition alleged that land claimed by Zarkasha under a deed filed in Waller County was actually located in Montgomery County and "[t]hat allegation brings into question the location of the county line

17

between Montgomery County and Waller County and whether or not [Zarkasha's] property is located in part in Montgomery County." Philo's report also stated that "the dispute is not a simple boundary line dispute between neighbors – but rather a claim by the [Moores] that [Zarkasha] does not own a part of the land that is described in [Zarkasha's] title insurance policy[]" and "the best way to determine whether or not there is a true overlap of land [] is to determine exactly where the common county line is located[.]"[4]

Old Republic's Reply

In its reply, Old Republic argued that Zarkasha misrepresented the substance of the policy by neglecting to indicate that the coverage was subject to the stated exclusions in the policy. Old Republic also argued that Zarkasha misrepresented the Moores' petition.

> The Moores' petition begins by describing the Moores' property by metes and bounds, beginning at the northwest corner of their tract "common with the northwest corner of the said 103.1 acres, *same being in the west line of Montgomery County, Texas, the east line of Waller County, Texas….*" (emphasis added). The Moores' legal description closes by ending in "the west line of Montgomery County, Texas, and the east line of Waller County, Texas." The Moores do not describe or claim any property located in Waller County, Texas. The Moores then refer to Zarkasha's claimed interest by stating "the nature of Defendants' interest in the property is a special warranty deed with vendor's lien that was filed in Waller County on or about August 12, 2009, Volume 1172, Page 590. A copy of the deed was attached to the

---

[4] Philo also stated in his report that the Legislature formed Montgomery County in 1837, and when Waller County was formed in 1873, Waller County included some land that had originally been part of Montgomery County.

Moores' petition as Exhibit B and is attached to [Old Republic-National's] amended motion for summary judgment as Exhibit 2. The deed to Zarkasha also contains a metes and bounds description which starts at a point described as "*the east line of said Waller County…and the west line of said Montgomery County.*" The legal description in the Zarkasha deed then runs *"along the common line of said W. Berryman Survey, the east line of said Waller County, the west line of said David C. Dixon Survey, the west line of Montgomery County…"* (emphasis added). In other words, the Zarkasha deed, as referenced in the Moores' pleading, has as its easterly border the Waller County-Montgomery County line.

According to Old Republic, "there is no way" the Zarkasha tract could be located in Montgomery County or that the Moores' tract could be located anywhere other than Montgomery County, based on the metes and bounds legal descriptions. Old Republic also argued that the location of the Montgomery County-Waller County boundary line—which is the boundary line between the Moore and Zarkasha tracts—was the central dispute between the Moores and Zarkasha. In addition, Old Republic noted that Zarkasha offered no response to Old Republic's limitations argument.

Zarkasha's Sur-Reply

In a sur-reply, Zarkasha argued that the central question was whether the Old Republic title policy "covers the land or whether it covers the land only if it's located in Waller County." Zarkasha argued that the Moores' claims were a threat to Zarkasha's title, and it had not been determined whether Zarkasha's land lay in Waller or Montgomery County. According to Zarkasha, there was no exception or

19

exclusion in the title insurance policy that would exempt Old Republic from the duty to defend "if an error later determines the land is located in Montgomery County[]" and the policy specifically covers claims for filing the deed in the wrong county.

Old Republic's Motion to Strike and Objection to Evidence

Old Republic filed a Motion to Strike Expert Testimony as well as an amended motion to strike, challenging Philo's report. Old Republic argued that Philo's report expressed opinions "only on matters of law" that are within the sole province of the court. Old Republic also argued that Philo's opinions addressed Old Republic's conduct in issuing the policy, and the statute of limitations would bar any complaints because the policy was issued in 2009. Old Republic also argued that Philo's opinions about the underlying dispute between the Moores and Zarkasha were irrelevant because those parties had settled. In addition, Old Republic argued that Philo's testimony on custom and usage in the insurance business was barred by the eight-corners rule.

Old Republic later filed a motion to strike and objection to Zarkasha's summary judgment evidence, objecting to the report of Robert Philo and arguing that Philo's testimony was offered only on matters of law, and that Philo's report was not sworn or accompanied by an affidavit, was hearsay, and was not competent summary judgment evidence.

In response, Zarkasha argued that Old Republic mischaracterized Philo's opinions as "mere opinions on matters of law." Instead, Zarkasha argued that Philo opined: that Old Republic knew or should have known the Zarkasha tract was located entirely within Waller County; that the dispute between the Moores and Zarkasha is not a boundary dispute but rather a claim by the Moores that Zarkasha does not own a part of the land described in the title insurance policy; that Old Republic failed to conduct an inquiry on where the property covered by the policy was located; and that if the Zarkasha tract is actually located in Montgomery County, Old Republic could raise defenses of adverse possession and a fence line easement dividing the tracts. Zarkasha conceded that an expert may not testify as to his opinion on a pure question of law but argued that an expert may state an opinion on a mixed question of law and fact on the relevant issues. According to Zarkasha, Philo's opinions were admissible because they were grounded in fact and he applied the facts to the underlying language in the title policy. In addition, Zarkasha argued that title policy ambiguity is a question of fact on which expert opinion is permitted and that Philo's testimony was permitted as to the applicability of policy exceptions and exclusions "provided the contract terms are unclear or ambiguous[]" and that the title policy at issue was ambiguous because it failed to specify the meaning of the term "'boundary-line' exception[.]" Zarkasha also argued that its settlement with the

21

Moores did not moot the matter of Old Republic's liability but rather established the damages owed to Zarkasha.

In its reply, Old Republic argued that the cases Zarkasha cited for coverage under an insurance policy all hold that this issue is solely a matter of law for the court to decide and legal issues are not subject to interpretation by an expert. Old Republic argued that Zarkasha never pleaded that the policy was ambiguous, and ambiguity of the policy should be determined as a matter of law by the court.

Final Order and Judgment

On November 6, 2019, the trial court granted Old Republic's Amended Motion for Summary Judgment and ordered that Zarkasha take nothing. Zarkasha filed a motion for reconsideration, arguing that it had not been determined where the disputed property lay, and that Old Republic had a duty to investigate Zarkasha's claim about the location of the disputed tract. The trial court entered a Final Judgment dismissing the Moores' claims against Zarkasha, dismissing Zarkasha's claims against the Moores, ordering that Zarkasha take nothing from Old Republic, and disposing of all claims of all parties.[5]

Zarkasha filed a Motion for New Trial & Request for Hearing, arguing that a fact issue existed as to "the terms and duties of the insurer pursuant to the policy[]"

---

[5] The appellate record does not include a ruling by the trial court on the Motion to Strike or the Objections to the summary judgment evidence.

and that it had not been determined whether the land at issue lay in Waller or Montgomery County. The trial court denied the motion for new trial, and Zarkasha timely filed its notice of appeal.

Issues

In Appellant's first issue on appeal, Zarkasha argues that the trial court erred in granting summary judgment because genuine issues of material fact existed regarding Appellees' duty to defend Appellant under a policy of title insurance under the eight-corners rule. Appellant argues that the trial court granted summary judgment "absent any determination of a factual basis for the Appellees' claims, such as the location of the property and the amount of land in dispute." According to Appellant, the underlying lawsuit concerns a "boundary overlap" of about half an acre. Appellant argues that the title policy contains no exception for the disputed tract being located in Montgomery County, and no determination had been made whether the disputed land lay in Montgomery or Waller County. Appellant also argues that the title policy is "rife with ambiguities[,]" including whether the policy covers claims after the date of the policy and whether the policy covers the failure to record Zarkasha's deed in Montgomery County. In addition, Appellant argues the underlying lawsuit is not a boundary-line dispute. Appellant argues that the policy exclusion for disputes arising after the date of issuance of the policy does not apply because "the claims made by the Moores, if valid, existed prior to the purchase of

23

the title policy by Zarkasha[]" because "the land discrepancy existed at the time of the sale" to Zarkasha. Citing to Florida cases, Appellant argues that "[s]ummary judgment is improper where a land overlap is created by a recorded deed."

In Appellant's second issue, Zarkasha argues that summary judgment was improper because genuine issues of material fact existed regarding the Appellees' duty to indemnify Appellant under the policy of title insurance. Appellant argues that the issue of indemnification is a fact issue to be determined by a jury, which precludes summary judgment. According to Appellant, a fact issue existed on the "magnitude of indebtedness which Appellees owed Zarkasha" and there was no summary judgment evidence that negated Zarkasha's indemnity claim.

Standard of Review and Applicable Law

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). The movant for a traditional summary judgment has the burden to establish that no genuine issues of material fact exist and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). The trial court may consider all competent

24

evidence on file at the time of the summary judgment hearing. *See* Tex. R. Civ. P. 166a; *Lance v. Robinson*, 543 S.W.3d 723, 732 (Tex. 2018).

In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in the nonmovant's favor. *Id.* at 549. Because the trial court's order in this case does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)). In this case, the trial court denied summary judgment on Old Republic's first motion for summary judgment and granted summary judgment based on Old Republic's amended motion for summary judgment. Therefore, we only consider the grounds for summary judgment raised by Old Republic's amended motion. *See* Tex. R. Civ. P. 65 (upon substitution of amended pleading for an earlier version, the latter "shall no longer be regarded as a part of the pleading in the record of the cause"); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 231 (Tex. App.—Dallas 2000, pet. denied) ("A substituted or amended motion for summary judgment super[s]edes and supplants the previous

25

motion, which may no longer be considered."). If a party objects to its opponent's summary judgment evidence but the trial court does not enter an order sustaining the objection, the evidence remains part of the summary judgment proof. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (citing *Dolcefino v. Randolph*, 19 S.W.3d 906, 927 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 842 (Tex. App.—Dallas 2003, no pet.)).

Whether an insurer owes a duty to defend the insured party is a question of law that we review de novo. *See Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 169 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Huffhines v. State Farm Lloyds*, 167 S.W.3d 493, 496 (Tex. App.—Houston [14th Dist.] 2005, no pet.). An insurer is only required to defend cases within the policy's coverage. *See Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). In determining a question of insurance coverage, we look first to "the language of the policy because we presume parties intend what the words of their contract say." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We give the policy's terms "their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Id*.; *see also JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602-03 (Tex. 2015). Because insurance policies are contracts,

26

we construe them "according to general rules of contract construction to ascertain the parties' intent." *Gilbert*, 327 S.W.3d at 126; *see also Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020) "Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Gilbert*, 327 S.W.3d at 133; *see also State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) ("Only if an insurance policy remains ambiguous despite these canons of interpretation should courts construe its language against the insurer in a manner that favors coverage.").

Whether a contract is ambiguous is a question of law for the court to decide and is subject to de novo review. *See Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009); *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008). To determine whether a contract is ambiguous, a court looks at the contract as a whole and considers the circumstances at the time of the agreement. *See Sadler Clinic Ass'n, P.A. v. Hart*, 403 S.W.3d 891, 895 (Tex. App.—Beaumont 2013, pet. denied) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "[A]n ambiguity does not exist simply because the parties interpret a policy differently." *Gilbert*, 327 S.W.3d at 133 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d

27

154, 157 (Tex. 2003)). If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law. *Id.* (citing *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)). If a contract contains an ambiguity, a grant of summary judgment is improper because interpretation of the contract is a fact issue. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

In determining whether an insurer has the duty to defend a claim against its insured, we apply the eight-corners rule, which provides that when a plaintiff sues an insured, the liability insurer's duty to defend is determined by the claims alleged in plaintiff's pleadings and the terms of the policy, without regard to the truth or falsity of the allegations in the pleadings. *See Richards*, 597 S.W.3d at 494, 498-99 & n.8 (explaining the rule and stating it is applied "routinely" and that "[c]ommentors generally consider the eight-corners rule a settled feature of Texas law."); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) (citing *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965)). The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings. *Fielder Rd. Baptist Church*, 197 S.W.3d at 308 (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). Facts outside the pleadings, even those easily

28

ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage. *Id.* (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). "'[A]n insurer is entitled to rely solely on the factual allegations contained in the petition in conjunction with the terms of the policy to determine whether it has a duty to defend.'" *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) (quoting *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997)). If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend the lawsuit against its insured. *See Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994).

The duty to indemnify is a duty independent of the duty to defend under a liability insurance policy. *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 334 S.W.3d 217, 219 (Tex. 2011) (per curiam); *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743-44 (Tex. 2009); *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). While the duty to defend typically arises during litigation, resulting in the applicability of the eight-corners rule for resolving duty-to-defend disputes, the duty to indemnify is generally determined based on actual facts establishing liability based on proven, adjudicated facts. *Burlington*, 334 S.W.3d at 219; *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008); *see also Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267

29

S.W.3d 20, 31 n.41 (Tex. 2008) ("[T]he duty to indemnify is triggered not by the allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy.") (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 5 (Tex. 2007)); *Cowan*, 945 S.W.2d at 821; *Great Am. Lloyds Ins. Co. v. Vines-Herrin Custom Homes, LLC*, No. 05-15-00230-CV, 2016 Tex. App. LEXIS 9407, at *11 (Tex. App.—Dallas Aug. 25, 2016, pet. denied) (mem. op.). There can be circumstances where the pleadings in the underlying action may negate both the duty to defend and the duty to indemnify. *Burlington*, 334 S.W.3d at 219; *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam). Such circumstances may involve allegations contained in the petition in the underlying lawsuit that would render it impossible for the insured to show by extrinsic evidence that the loss falls under the terms of the policy. *Burlington*, 334 S.W.3d at 220; *Griffin*, 955 S.W.2d at 81-82. If a policy does not provide coverage for a claim made against an insured, the insurer has no duty to indemnify regarding that claim. *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d 261, 272 (Tex. 2021).

Analysis

Zarkasha had the initial burden to establish that a claim had been made against Zarkasha that would trigger coverage under the terms of the policy. *See Gilbert*, 327 S.W.3d at 124. Zarkasha alleged that the Moores' claim as outlined in Moores' petition was a covered claim and that Old Republic was obligated under the policy

to guarantee Zarkasha's title "including area, boundary and recording[]" and Zarkasha alleged that the Moores' claim to a disputed portion of Zarkasha's property is a "covered event[] pursuant to the[] title policy." According to Zarkasha, the Moores' claim relates to "discrepancy and conflict in acreage and alleged misfiling of the deeds conveying ownership to Zarkasha in Waller County, Texas." In response to Old Republic's amended motion for summary judgment, Zarkasha argued that its title insurance policy covered the risk of "a document not properly filed, recorded, or indexed in the Public Records[.]" According to Zarkasha, the Moores' claims resulted from the failure of Old Republic to file the deed to Zarkasha's property in Montgomery County.

Old Republic denied Zarkasha's allegations and had the burden to plead and prove that the claim was not covered or fell within an exclusion to the policy's coverage. *Id.* Old Republic argued that two exclusions applied to exempt it from defending Zarkasha: (1) an exception from coverage for "[a]ny discrepancies, conflicts, or shortages in area or boundary lines[]" and (2) an exclusion from coverage for "[d]efects, liens, encumbrances, adverse claims, or other matters [] attaching or created subsequent to Date of Policy[.]"

The Boundary Dispute Exception

The Old Republic title policy contains an exception from coverage for "[a]ny discrepancies, conflicts, or shortages in area or boundary lines…." Old Republic

31

contends that this exception applies and therefore it has no obligation to defend Zarkasha from the claims made by the Moores.

The Moores' petition claimed that they owned property in Montgomery County to which Zarkasha was making an adverse claim. The petition described the Moores' property as being located in Montgomery County and containing a boundary of "the West line of Montgomery County, Texas, the East line of Waller County, Texas[.]" Attached to Zarkasha's title insurance policy that Zarkasha purchased from Old Republic was a description of Zarkasha's property, which states the Zarkasha property is in Waller County and contains a boundary of the "West line of [] Montgomery County[.]" Old Republic alleged that "the designations of the respective boundaries do not allow for any conflict or overlap," and under the exception for conflicts in boundary lines, Old Republic was not obligated to defend Zarkasha under the policy.

Once Old Republic identified the alleged exclusion and established that the allegations in Moores' petition fell within the exception, the burden shifted to Zarkasha. *See Gilbert*, 327 S.W.3d at 124. Zarkasha argued that the policy was ambiguous because it did not define "'boundary-line' exception" and that ambiguity is a fact question. However, whether a contract is ambiguous is a question of law for the court to decide. *See Kelley*, 284 S.W.3d at 808. Zarkasha has not identified how the phrase "boundary line" is uncertain, doubtful, or susceptible to more than one

32

interpretation. *See Heritage Res., Inc.*, 939 S.W.2d at 121. The exception contained in the title policy expressly states the policy does not insure against loss or damage that arises by reason of "discrepancies, conflicts, or shortages in area or boundary lines[.]" Zarkasha failed to demonstrate that the policy is ambiguous as a matter of law. *See Kelley*, 284 S.W.3d at 808; *see also Rockhold v. Fidelity Nat'l Title Ins. Co.*, No. 04-98-00504-CV, 1999 Tex. App. LEXIS 2989, at \*\*7-9 (Tex. App.—San Antonio, Apr. 21, 1999, no pet.) (mem. op.) (concluding that identical language was unambiguous as a matter of law).

Zarkasha also argues that a fact issue exists "concerning the location of the property and the amount of land in dispute." Zarkasha contends that only a correct survey and determination from a fact-finder will determine the dispute, and Zarkasha relies upon the report of Robert Philo that Zarkasha attached to its response to Old Republic's amended motion for summary judgment. For purposes of determining whether Old Republic owes a duty to defend Zarkasha from the allegations in Moores' petition, we are limited to consideration of the title policy and the Moores' petition under the eight-corners rule, and we may not consider the Philo report.[6] *See id.*

---

[6] Although we do not consider the report of Robert Philo because it falls outside the eight-corners rule, we note that Philo's report stated that "the best way to determine whether or not there is a true overlap of land [] is to determine exactly where the common county line is located[.]"

Based on the pleading filed by the Moores, the only issue between the Moores and Zarkasha is the physical location of the boundary line, and the property descriptions provided within the petition and the title insurance policy indicate that the county boundary line is the dividing line between the respective properties. Where the deeds under which both parties claim title state a common boundary, their dispute is a boundary dispute. *See Plumb v. Steussy*, 617 S.W.2d 667, 669 (Tex. 1981) ("If there would have been no case but for the question of boundary, then the case is necessarily a boundary case even though it might involve questions of title."); *Rockhold*, 1999 Tex. App. LEXIS 2989, at **8-11 (concluding that a petition need not specifically plead a boundary discrepancy to invoke a boundary-dispute exclusion, and where the pleadings alleged that the plaintiff was entitled to an easement that overlapped defendant's property, the claim was not covered under the title insurance policy that included a boundary-dispute exclusion); *Brownlee v. Sexton*, 703 S.W.2d 797, 799 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (characterizing the dispute as a boundary dispute where both parties claimed title under deeds that stated Shannon Creek was the boundary). On this record, Old Republic met its burden to show an exclusion to coverage applied, and we cannot say that Zarkasha met its burden to show the "boundary line exception" did not

govern the claims so that under the eight-corners rule the claim fell within the policy. *See Gilbert*, 327 S.W.3d at 124.[7]

The "Subsequent Claim" Exclusion

Old Republic also argued that the title insurance policy included an exclusion for adverse claims that were created subsequent to the date of the policy. Old Republic argued that because the Moores acquired their property in 2017 and filed their petition in 2018, their adverse claim arose subsequent to the date of the policy in 2009. The title policy, under the heading "Exclusions From Coverage," in subparagraph 3.(d) states in relevant part that it excludes coverage for "defects, liens, encumbrances, adverse claims, or other matters…. attaching or created subsequent to Date of Policy…." Zarkasha argued that this exclusion did not apply because the "claims made by the Moores, if valid, existed prior to the purchase of the title policy" and the land discrepancy would have existed at the time Zarkasha acquired the Zarkasha tract. We need not examine this argument because we have already determined that Old Republic did not have a duty to defend Zarkasha based on the

---

[7] Boundary discrepancy exceptions in some older title insurance policies had language added to the exception that included the phrase "that a correct survey would show." As explained by at least one treatise, under the old language, the exception did not relieve the insurer of liability for a loss suffered due to a discrepancy when the discrepancy would not be revealed by a "correct survey." *See* W. Dorsaneo, 17 *Texas Litigation Guide* § 256.11 (2021) (citing *Dall. Title & Guar. Co. v. Valdes*, 445 S.W.2d 26, 30 (Tex. App.—Austin 1969, writ ref'd n.r.e.); *Hou. Title Guar. Co. v. Fontenot*, 339 S.W.2d 347, 350 (Tex. App.—Houston [1st Dist.] 1960, writ ref'd n.r.e.)).

exception for "discrepancies, conflicts, or shortages in area or boundary lines[.]" *See* Tex. R. App. P. 47.1; *Knott*, 128 S.W.3d at 216 ("[W]e must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious."). We overrule Appellant's first issue.

We next address the duty to indemnify. Zarkasha settled with the Moores before the trial court granted Old Republic's summary judgment. Therefore, there were no adjudicated facts in the underlying litigation. *See Cowan*, 945 S.W.2d at 821. Having already concluded that Old Republic had no duty to defend, we further conclude that the trial court did not err in granting summary judgment to Old Republic on the duty to indemnify. *See Griffin*, 955 S.W.2d at 84 ("[W]hen the insurer has no duty to defend[,] . . . *the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.") (emphasis in original). We overrule Appellant's second issue.

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 16, 2021
Opinion Delivered August 26, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.

36